# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | |
|---|---|
| AMERICAN STRATEGIC INSURANCE CORP., as subrogee of MIKE HORTON, | Civil Case No. _____ |
| Plaintiff, | **COMPLAINT** <br> **JURY TRIAL DEMANDED** |
| v. | |
| CLUB CAR, LLC and CURTIS INSTRUMENTS, INC., | |
| Defendants. | |

**COMES NOW** Plaintiff American Strategic Insurance Corp., as subrogee of Michael Horton, by and through its undersigned counsel, and respectfully moves for judgment against Defendants Club Car, LLC and Curtis Instruments, Inc. and asserts the following:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff American Strategic Insurance Corp. ("ASI" or "Plaintifff"), is a Florida corporation with a principal place of business located at 805 Executive Center Drive West, Suite 300, St. Petersburg, Florida 33702. At all times relevant hereto, ASI was authorized to transact business and issue policies of insurance in the State of South Carolina.

2. Upon information and belief, Defendant Club Car, LLC ("Club Car") is a Delaware limited liability company with its corporate headquarters and principal place of business located at 4125 Washington Road, Evans, Georgia 30809. Club Car is registered to transact business in this State with the South Carolina Secretary of State and its appointed agent for service of process is CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times relevant hereto, Defendant Club Car conducted substantial business in South Carolina

-1-

and the cause of action arises out of a tort committed in whole or in part within South Carolina and which resulted in property damage in South Carolina, and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803.

3. Upon information and belief, Defendant Curtis Instruments, Inc. ("Curtis") is a New York corporation with its corporate headquarters and principal place of business located at 200 Kisco Avenue, Mt. Kisco, New York, 10549. Defendant Curtis is not registered to transact business in this State and pursuant to South Carolina Code § 15-9-245 can be served service of process through the South Carolina Secretary of State, 1205 Pendleton Street, Suite 525 Columbia, South Carolina 29201. At all times relevant hereto, Defendant Curtis conducted substantial business in South Carolina and the cause of action arises out of a tort committed in whole or in part within South Carolina and which resulted in property damage in South Carolina, and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803.

4. This Honorable Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332.

5. Venue of this action properly lies in the District of South Carolina, pursuant to 28 U.S.C. § 1391(a), and within this division, pursuant to L.R. 3.01, as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred.

## CONDITIONS PRECEDENT

6. All conditions precedent to the filing of this action and to ASI's right to the relief sought have occurred, have been performed, or have been excused.

## FACTS

7. Plaintiff incorporates by reference the averments contained in the preceding paragraphs as if fully set forth at length herein.

8. At all times relevant hereto, ASI provided insurance coverage to Mike Horton ("Mr. Horton" or "Plaintiff's Insured"), covering his real and personal property located at 215 Calhoun Drive, Unit A, Murrells Inlet, South Carolina 29576 (the "Subject Premises"), under policy number SCA9681.

9. On or about April 20, 2014, a fire originated at the adjacent property, 215 Calhoun Drive, Unit B, Murrells Inlet, South Carolina 29756 (the "Origin Property").

10. The fire, which caused serious injury and/or death to members of the family renting the Origin Property, also spread to the Subject Premises, causing significant damage to the Subject Premises and the contents therein.

11. Subsequent investigation revealed that the fire started within an electric Club Car golf car, serial number PJ0841-970288 ("Subject Golf Car"), which was charging in the covered garage on the ground floor of the Origin Property.

12. Upon information and belief, the Subject Golf Car's electronic system and components were manufactured, designed, tested, and assembled by Defendants Club Car and Curtis.

13. Upon information and belief, the family renting the origin property had rented the Subject Golf Car on or about April 19, 2014, from Woody's Beach Rentals ("Woody's"), a local business engaged in renting golf cars.

14. On April 19, 2014, and at all times relevant, the Subject Golf Car was equipped with an OEM onboard automatic battery charging device.

15. The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, onboard automatic battery charging device, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects as the time it was leased from Woody's by the family renting the Origin Property, as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

16. Upon information and belief, Woody's purchased the Subject Golf Car from Ocean Lakes Family Campground ("Ocean Lakes"), vacation resort located in Myrtle Beach, South Carolina, on or about September 2, 2013.

17. The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects as the time it was sold by Ocean Lakes to Woody's, as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

18. Upon information and belief, Ocean Lakes initially purchase the Subject Golf Car as new from Defendant Club Car in May of 2008.

19. The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects as the time it was acquired by Ocean Lakes, as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

20. Upon information and belief, the Subject Golf Car had not been altered or misused by any of the parties renting the Origin Property.

21. Upon information and belief, at the time the fire occurred, the AC Cord connected to the Subject Golf Car's onboard battery charging device was properly plugged into an outlet located on the ground floor covered garage of the Origin Property, and the Subject Golf Car and its onboard battery charging device were properly and adequately ventilated.

22. As a result of their design, manufacture, and assembly, the electrical systems and componentry within the Subject Golf Car experienced arcing, sparking, and the unwanted, unintended energization of certain internal circuits during the charging process, causing the fire.

23. As a result of the above-referenced damage sustained at the Subject Premises due to the fire, Mr. Horton submitted an insurance claim with Plaintiff.

24. Pursuant to the above-referenced claim and the terms of the above-referenced policy, Plaintiff ultimately made payments of $186,063.55, to indemnify its insured.

25. Pursuant to the terms of the above-referenced policy and by operation of law, Plaintiff is subrogated to the rights of it insured to the extent of its payments, and now seeks recovery from Defendants

### COUNT I – STRICT PRODUCTS LIABILITY
### PLAINTIFF v. CLUB CAR, LLC and CURTIS INSTRUMENTS, INC.

26. Plaintiff incorporates by reference the averments contained in the preceding paragraphs as if fully set forth at length herein.

27. At all relevant times relevant, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

28. Pursuant to S.C. Code § 15-73-10 et seq., Defendants Club Car and Curtis are strictly liable in tort, irrespective of privity, for manufacturing, designing, assembling and placing

a defective and unreasonably dangerous product in the stream of commerce to damage the Subject Premises.

29. Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

30. Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

31. The Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

32. At all relevant times, including when the incident alleged herein occurred, the Subject Golf Car and its systems and components, were used in an intended and/or foreseeable manner.

33. The Subject Golf Car and its electrical systems and components were neither misused nor materially altered, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components were in the same or substantially similar condition that they were in at the time of sale.

34. The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

35. Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

36.     Defendants Club Car and Curtis manufactured designed, assembled and placed the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and failed to:

(a)     Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(b)     Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(c)     Properly design, manufacture and assemble the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(d)     Properly design, manufacture and assemble the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(e)     Properly design, manufacture and assemble the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(f)     Properly design, manufacture and assemble the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(g)     Properly design, manufacture and assemble the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(h)     Properly design, manufacture and assemble the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(i)     Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(j)     Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to sufficiently prevent dangerous, unintended arcing and sparking;

(k)  Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(l)  Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(m)  Properly design, manufacture and assemble the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(n)  Adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(o)  Adopt and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(p)  On such other and further particulars as the evidence may show.

37.  As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within, the Subject Golf Car ignited on April 20, 2014.

38.  The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 fire that damaged the Subject Premises.

39.  As a direct and proximate result of the fire, Mr. Horton sustained damage to his real and personal property, along with incidental and consequential damages, and Plaintiff paid $186,063.55 to indemnify Mr. Horton.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, attorneys' fees, costs of suit, and such other relief the Court deems appropriate.

## COUNT II – NEGLIGENCE and/or GROSS NEGLIGENCE
## PLAINTIFF v. CLUB CAR, LLC and CURTIS INSTRUMENTS, INC.

40. Plaintiff incorporates by reference the averments contained in the preceding paragraphs as if fully set forth at length herein.

41. Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

42. Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

43. Defendant Club Car owed Mr. Horton a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

44. Defendant Curtis owed Mr. Horton a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

45. The Subject Golf Car and its systems and components were neither merchantable nor reasonably suited to the use intended when placed into the stream of commerce by Defendants.

46. At all relevant times, including when the incident alleged herein occurred, the Subject Golf Car and its systems and components were used in an intended and/or foreseeable manner.

47. The Subject Golf Car and its electrical systems and components were neither misused nor materially altered and, at the time of the incident complained of herein, the Subject Golf Car and its systems and components were in the same or substantially similar condition that they were in at the time of sale.

48. The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

49. Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

50. Defendants Club Car and Curtis were negligent, grossly negligent, willful, wanton, reckless and/or careless in manufacturing, designing, assembling and placing the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and breached their respective duties to Mr. Horton by:

    (a) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently resist the foreseeable of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

    (b) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

    (c) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

    (d) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance.;

    (e) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air

in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(f) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(g) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(h) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(i) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(j) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(k) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(l) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(m) Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(n) Failing to adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(o) Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(p) On such other and further particulars as the evidence may show.

51. As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within, the Subject Golf Car ignited on April 20, 2014.

52. The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 fire that damaged the Subject Premises.

53. As a direct and proximate result of the fire, Mr. Horton sustained damage to his real and personal property, along with incidental and consequential damages, and Plaintiff paid $186,063.55 to indemnify Mr. Horton.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, attorneys' fees, costs of suit, and such other relief the Court deems appropriate.

### COUNT III – FAILURE TO WARN
### PLAINTIFF v. CLUB CAR, LLC and CURTIS INSTRUMENTS, INC.

54. Plaintiff incorporates by reference the averments contained in the preceding paragraphs as if fully set forth at length herein.

55. Defendant Club Car, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

56. Defendant Club Car had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer and the community at large during the foreseeable and anticipated use of the product it sold.

-12-

57.  Defendant Club Car therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Golf Car to inform third persons of the facts which the Subject Golf Car dangerous to users, consumers, and the community at large.

58.  Specifically,

  (a)  Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent dangerous, unintended arcing and sparking;

  (b)  Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy;

  (c)  Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance; and

  (d)  Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

59.  Defendant Club Car breached these respective duties by failing to provide adequate warnings of the potential risks of the Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer and the community at large.

60.  Defendant Curtis, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

61. Defendant Curtis had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer and the community at large during the foreseeable and anticipated use of the product it sold.

62. Defendant Curtis therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Golf Car to inform third persons of the facts which make the Subject Golf Car dangerous to users, consumers, and the community at large.

63. Specifically,

   (a) Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent dangerous, unintended arcing and sparking;

   (b) Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy;

   (c) Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance; and

   (d) Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

64. Defendant Curtis breached these respective duties by failing to provide adequate warnings of the potential risks of the Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer and the community at large.

65. As a direct and proximate result of the Defendants' failure to warn, the Subject Golf Car and its internal systems and components, the electrical systems and componentry within, the Subject Golf Car ignited on April 20, 2014.

66.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 fire that damaged the Subject Premises.

67.     As a direct and proximate result of the fire, Mr. Horton sustained damage to his real and personal property, along with incidental and consequential damages, and Plaintiff paid $186,063.55 to indemnify Mr. Horton.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, attorneys' fees, costs of suit, and such other relief the Court deems appropriate.

### JURY DEMAND

Plaintiff respectfully requests a trial by jury as to all issues so triable.

Respectfully submitted,

November 1, 2016                **McNAIR LAW FIRM, P.A.**

　　s/Lane D. Jefferies
Lane D. Jefferies, Fed ID #11988
2411 N. Oak Street, Suite 206 (29577)
Post Office Box 336
Myrtle Beach, SC 29578-0336
Ph:     (843) 444-1107
Fax:    (843) 444-3964
Email: ljefferies@mcnair.net

Matthew I. Ferrie (*pending pro hac vice*)
White & Williams, LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Ph:     (215) 864-7031
Fax:    (215) 399-9624
Email: ferriem@whiteandwilliams.com

*Attorneys for Plaintiff*